## PORTO RICO FERTILIZER COMPANY, Petitioner, *v.* DISTRICT COURT OF HUMACAO, Respondent.

No. 693.   Argued February 10, 1930.—Decided April 11, 1930.

*Dubón & Ochoteco,* for petitioner.   *A. Arroyo Rivera,* for plaintiff in the main action.

MR. JUSTICE TEXIDOR delivered the opinion of the court.

From the certiorari petition, the record returned, and two certificates exhibited in this case, the following appears:

That Stubbe Brothers, Incorporated, brought an action in the District Court of Humacao against José Agustín Díaz to recover a certain sum which, according to the petition herein, amounts to $4,432, although other sums were subsequently claimed.   The suit bears number 11954 of that court.

That in the said action a sugar-cane plantation belonging to the defendant was attached to secure the effectiveness of the judgment; that a further levy was made thereon and Antonio Roig, who had been appointed administrator of the plantation, attended to the grinding of the cane and deposited in court the net proceeds thereof amounting to $9,176.07.

That in the same case, on July 1, 1929, the court rendered a judgment against the defendant, who was ordered to pay to Stubbe Brothers, Inc., the sum of $2,088.66, with interest thereon at the rate of 12 per cent per annum, and in addition thereto $233.28 for certain implements bought and $300 as attorney's fees, together with costs.   The said judgment was notified to the parties, both of whom appealed therefrom.

That J. C. Manrique instituted in the District Court of San Juan an action of debt, numbered 8177, against José Agustín Díaz and, pursuant to execution proceedings therein,

the marshal of the District Court of Humacao levied upon the $9,176.07, which had been attached by Stubbe Brothers, Inc., a sufficient amount to cover $785.61 as principal and $152.94 as interest and costs, notice thereof having been served on the clerk of the District Court of Humacao, who issued a check for $938.55 in satisfaction of the judgment.

That Salvador L. Rocafort brought in the District Court of Humacao an action of debt (No. 14436) against José Agustín Díaz and, within the said action and to secure the effectiveness of any judgment that might be rendered, the court made an order for the attachment of $2,237.45 out of the $9,176.07 deposited in the office of the clerk of the court by the judicial administrator in civil case No. 11954, and notice of the attachment was served upon such clerk.

That on August 1, 1929, in an action (civil case No. 10225) brought by the Porto Rico Fertilizer Co. against José Agustín Díaz in the District Court of San Juan, and to secure the effectiveness of the judgment, the marshal of the District Court of Humacao attached the sum of $2,165.75 out of the $9,176.07 which had been deposited as above stated, and notice of the attachment was served on the clerk of the District Court of Humacao, who was informed by the marshal that this notice was given so that, should the attachment levied by Stubbe Brothers in case No. 11954 be discharged, the attachment levied by the Porto Rico Fertilizer Co. in civil case No. 10225, prosecuted in the District Court of San Juan, should remain subsistent.

That the Porto Rico Fertilizer Co. brought an action in the District Court of San Juan against Salvador L. Rocafort, trading under name of S. L. Rocafort & Co., and for the purpose of securing the effectiveness of the judgment, it attached all the rights and interests of defendant Salvador L. Rocafort in action No. 14436, pending in the District Court of Humacao (which action had been brought by the said Rocafort against José Agustín Díaz), and the attachment was notified to the clerk of the District Court of Humacao

and to Salvador L. Rocafort, whereupon the clerk, on August 9, 1934, entered a note thereof on the record of said case No. 14436.

That Stubbe Brothers and José Agustín Díaz filed in the above mentioned civil case No. 11954 a stipulation whereby the defendant therein was allowed to furnish a bond in the amount of $7,000 to discharge the attachment levied in the said case, which stipulation, together with the bond furnished, was approved by the district judge, who ordered the attachment for $5,500 and the further levy for $2,000 discharged, and thereupon the attached funds were placed at the disposal of the defendant Díaz.

On the same date of the filing of the above stipulation, to wit, on December 4, 1929, the said Rocafort, plaintiff in civil case No. 14436, filed a motion consenting to the discharge of the said attachment and to the delivery of the attached funds. Thereupon the clerk of the District Court of Humacao delivered to José A. Díaz, defendant in those cases, a check for $8,090.87, and such delivery was noted in the record of case No. 11954 by the clerk in his own handwriting.

The petitioner now contends that the District Court of Humacao acted without jurisdiction in ordering the delivery of the money to José Agustín Díaz, and that an attachment having been levied by petitioner, up to the amount of $2,165.75, on the sum deposited by the administrator in case No. 11954, the said order ought not to have been made without first notifying the Porto Rico Fertilizer Co., to be heard in said proceedings for the discharge of the attachment; that the order is void and deprived the petitioner of its constitutional right to have its day in court; that petitioner had caused an attachment to be levied upon every right, title and interest which Salvador L. Rocafort might have in the aforesaid sum in consequence of the action brought by the said Rocafort against José Agustín Díaz (civil case No. 14436, of Humacao) and the acquiescence of Rocafort in the discharge of the attachment was legally insufficient with-

out the consent of the petitioner; that the bond is void and ineffective since the sureties bind themselves only to Stubbe Brothers, Inc., for the sum of $7,000, and therefore, the said bond did not cover the attachment levied by the Porto Rico Fertilizer Co. in case No. 10225 up to the amount of $2,165.75, nor the attachment levied by Salvador L. Rocafort in case No. 14436, wherein the petitioner levied a second attachment.

The first question which presents itself to our consideration may be stated thus: Had the district court judicial notice of the attachments levied by the petitioner?

From the record of civil case No. 14436 of the District Court of Humacao (*Salvador L. Rocafort* v. *José Agustín Díaz*), there appears a notice, dated August 9, 1929, served by the marshal Rafael Más on the clerk of that court and filed by the clerk on the same day, showing that the Porto Rico Fertilizer Co., in civil case No. 10226 of the District Court of San Juan (*Porto Rico Fertilizer Co.* v. *S. L. Rocafort, etc.*), had attached all the rights and interests owned by the defendant in the case of *B. L. Rocafort & Co.* v. *Agustín Díaz,* pending before the District Court of Humacao, up to the amount of $2,165.75, and directing the clerk to hold that sum at the disposal of the plaintiff in said case No. 10226.

It also appears from the certificates issued by the clerk of the District Court of San Juan that the clerk of the District Court of Humacao was likewise notified of the attachments levied by the Porto Rico Fertilizer Co.

But it does not appear that the judge, the district court, itself, had any notice of the existence of these attachments.

As setting forth a rule of general application we quote the following excerpt from Wigmore on Evidence:

"2579. Same: (2) RECORDS OF PROCEEDINGS. The proceedings in a Court are constituted by the record, and this record originally took its name from the judicial memory ('recordari') which could be invoked for recalling those prior proceedings. Nevertheless, it seems to-day unreasonable, having regard to the general principle

of judicial notice (ante, 2565), to predicate an actual judicial knowledge of the proceedings in specific prior litigations (for they are commonly neither notorious, nor within the judge's duty of knowledge), or to expect the Court to make its own researches into the mass of the records for the purpose of informing itself. Accordingly, it may be said generally that a Court is not by any rule bound to take notice of the tenor of *any legal proceedings* (other than those transacting at the moment in its presence). Indeed, this much is assumed in the conceded rules of law which require the original of a judicial record to be produced in proof, and define the exceptions by which a copy is allowed to be used instead, (ante, 1215, 1216).

However, for reasons of convenience, where controversy is unlikely and the expense of a copy would be disproportionate, Courts are often found taking notice of the tenor or effect of some part of a judicial proceeding, without requiring formal evidence. Since this dispensation is not obligatory on the part of the Court, and since it must depend more or less on the practical notoriety and certainty of the fact under the circumstances of each case, little uniformity can be seen in the instance. It is often done for a part of the record in the *same proceeding*, or in a *prior stage of the same controversy;* less often for the record of a distinct litigation, especially when in another Court." Wigmore on Evidence, vol. 5, p. 593.

The above text-writer cites several decisions from various states, some favoring a strict compliance with the rule while others adopt a more liberal attitude. Although in the latter group is included the decision in *Gay* v. *Gay*. 146 Cal. 237, 79 Pac. 885, we notice that in that case the liberal interpretation of the rule was not carried to the point of transforming it into a strong exception. The court said:

"And, in passing, it may be said that this court will take judicial notice of proceedings had before us in this case which show that respondent has endeavored, in the apparent good faith with which the lower court found she was actuated in taking her appeal, to have her bill of exceptions settled to be used for all purposes for which it would be available to her."

Although involving a different situation, the case of *Sewell* v. *Johnson*, (Cal.) 134 Pac. 704, is important for the purposes of our decision herein. The appellee in that case maintained that the court could not take judicial notice of

the reversal of a judgment in a case before the same court, as nothing appeared from the record to show that the reversed judgment was the same relied upon by the appellee in his complaint in the court below. It was said in the opinion:

"The rule that the power of a court to consider on a pending appeal only matters which appear in that record is not of universal application, nor is the court always confined in the consideration and disposition of such appeal to the record therein. On the contrary, matters often arise subsequent to an appeal which may be brought before this court on evidence outside the record, and which will be considered and acted on in disposing of the appeal. A familiar illustration is where, after an appeal from a judgment, a new trial is granted in the superior court, or, when, after appeal, it appears that from some circumstances or fact occurring thereafter its further prosecution involves only a moot question. In both cases, on proper showing necessarily outside the record, this court will dismiss the appeals. The same result will follow where a penal statute on which a judgment depends is repealed pending the appeal, or the jurisdiction of the appellate court to entertain an appeal depends upon a statute which pending the appeal is repealed. In either case the appeal will be dismissed. Other circumstances might be cited in which the court acts in disposing of pending appeals on matters which are outside of the record in a particular case occurring subsequent to the appeal, and only brought to its attention upon suggestion or proceedings independent of the record."

In this jurisdiction, in *Martínez et al. v. Martínez,* 26 P.R. R. 142, 144, confirming the decisions in *Succession of Igaravidez et al. v. Rubert Brothers et al.,* 23 P.R.R. 272, and *Aparicio Brothers v. H. C. Christianson & Co.,* 25 P.R.R. 1, this court said:

"We have several times decided that we will not take judicial notice of another record in any but exceptional cases."

And in *Cruz et al. v. Quiñones,* 32 P.R.R. 529, 530, it was held that—

"As a general rule the court will not take notice of a previous appeal for an affirmative purpose of an appellant."

In the present case the District Court of Humacao could

have been directly informed of the true facts of the situation so that at the proper time it could have summoned the Porto Rico Fertilizer Co. to be heard in regard to the attachments. It was not enough that the clerk had notice, although the latter might have done something in the way of calling the attention of the court to the fact that the money was in his custody and possibly subject to disposal otherwise than as directed. But it does not appear that the court, as such, and within the action, had knowledge of the proceedings in the other cases, or that the interested party called its attention to such proceedings.

It is unnecessary here to pass upon other questions that might be considered, as the one above decided is sufficient for a determination of the case.

The writ of certiorari issued herein must be discharged.